UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES AUNE, | ) | CIV.  09-5009-JLV |
| CHARLES EICKOFF, | ) | |
| NICKOLAS JENNIGES, | ) | |
| GREGORY LARSON, | ) | |
| THOMAS MOELLER, | ) | |
| JOSE L. PENA, | ) | ORDER |
| TIMOTHY SANDERS, and | ) | DENYING PETITIONERS' |
| JONATHON WELLS, | ) | OBJECTIONS AND |
| | ) | ADOPTING REPORT AND |
| Petitioners, | ) | RECOMMENDATION |
| | ) | |
| vs. | ) | |
| | ) | |
| ADMINISTRATOR, WAGE & HOUR | ) | |
| DIVISION, U.S. DEPARTMENT OF | ) | |
| LABOR and | ) | |
| ADMINISTRATIVE REVIEW | ) | |
| BOARD, U.S. DEPARTMENT OF | ) | |
| LABOR, and the | ) | |
| UNITED STATES AIR FORCE, | ) | |
| | ) | |
| Respondents. | ) | |

**INTRODUCTION**

This case is an appeal from an administrative decision by the Wage and Hour Division ("WHD") of the United States Department of Labor.  (Docket 1). Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred the matter to Magistrate Judge Veronica L. Duffy for a report and recommendation.  The magistrate judge recommended denying petitioners' appeal and affirming the decision of WHD.  (Docket 30).  Petitioners timely filed objections to the report and recommendation. (Docket 33).  The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C.

§ 636(b)(1). For the reasons stated below, the court overrules the petitioners' objections and adopts the report and recommendation of the magistrate judge.

## PROCEDURAL HISTORY

Petitioners, working as metrology technicians, were employees of Bionetics Corporation ("Bionetics") under a Services Contract Act ("SCA")[1] contract with the United States Air Force ("Air Force") for the operation of the Ellsworth Air Force Base Precision Measurement Equipment Laboratory ("PMEL") from October 1, 1997, through September 30, 2002. (Docket 1, ¶ 1). Petitioners assert the contract improperly classified them as Electronic Technicians, Maintenance II ("EMT II").[2] Id. at ¶ 2. Petitioners sought a conformance action on November 16, 2000, asking the WHD to reclassify them to Engineering Technician IV ("ET IV") status. Id. at ¶ 3. WHD initially agreed they should be paid under the ET IV classification. Id. On June 21, 2002, following an objection by the Air Force, WHD withdrew the classification conformance and determined petitioners were properly classified and paid as ETM II's. Id. at ¶¶ 4 and 5.

Petitioners timely appealed to the Administrative Review Board ("ARB") for the United States Department of Labor. Id. at ¶ 6. The ARB remanded the matter to WHD, with several particularized areas of concern. In the matter of: Bionetics Corporation Dispute Concerning Job Classification and Wage Rates for Bionetics Employees Working on Contract F44650-97-D0005 at the Precision Measurement Equipment Laboratory, Ellsworth Air Force Base, South Dakota, ARB Case No. 02-094, 2004 WL 230772 (January 30, 2004)

---

[1] The McNamara-O'Hara Service Contract Act, 41 U.S.C. §§ 351-358.

[2] Sometimes abbreviated "ETMII."

("Bionetics I").  Following remand, the Deputy Administrator ("DA") of WHD issued a decision on October 31, 2005.  (Docket 1, ¶ 8).  That decision determined petitioners were properly classified as ETM II's.  Id.  Petitioners again appealed to the ARB.  Id. at ¶ 9.  On December 16, 2008, the ARB affirmed the decision of the DA.  In the matter of: Bionetics Corporation Dispute Concerning Job Classification and Wage Rate for Bionetics Employees Working on Contract F44650-97-D0005 at the Precision Measurement Equipment Laboratory, Ellsworth Air Force Base, South Dakota, ARB Case No. 06-135, 2008 WL 5454135 (December 16, 2008) ("Bionetics II").

That decision constituted the final agency decision and action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*  Petitioners timely perfected their appeal to this court.  The report and recommendation of the magistrate judge (Docket 30) prompted petitioners' objections (Docket 33), which can be summarized by the subsections of their objections:

> I.   The magistrate judge erroneously concluded the law of the case doctrine was not applicable.
>
> II.  The magistrate judge erroneously concluded there was substantial evidence to support the DA's 2005 decision.
>
> III. The magistrate judge erroneously concluded the Air Force's application for reconsideration of the September 2001 decision was timely made.

Id.  Each of those objections will be addressed with the same captions.

## DISCUSSION

### A.  MAGISTRATE JUDGE'S FINDINGS OF FACT

Magistrate Judge Duffy prepared a detailed summary of the facts constituting the administrative record. (Docket 30). That factual summary comprises forty-four pages of the report and recommendation. Id. at pp. 3-47. The petitioners' objections do not identify any specific factual findings which are in error; but rather, they focus their objections on the magistrate judge's interpretation of those facts in analyzing the agency's final decision. (Docket 33). The court completed a *de novo* review of both the original administrative record (Docket 7) and the supplemental administrative record (Docket 21) and concludes the magistrate judge's statement of facts is accurate. The magistrate judge's findings of fact are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C).

### B.  MAGISTRATE JUDGE'S CONCLUSIONS OF LAW

The court adopts the magistrate judge's statement of the standard of review applicable to the examination of the agency's decision. (Docket 30, pp. 47-50). As Magistrate Judge Duffy noted, "the Administrative Procedure Act ("APA") provides the sole basis for a district court's review of final agency decisions.  5 U.S.C. §§ 702, 704." (Docket 30, p. 47). "Under the APA, the ARB must uphold the WHD's findings unless they are 'contrary to the law or unsupported by substantial evidence' in the record as a whole." Id. (citing Meehan Seaway Serv. Co. v. Director, Office of Workers' Compensation

Programs, 125 F.3d 1163, 1166 (8th Cir. 1997); and 5 U.S.C. §§ 706 (2)(A), (E)). "A district court's review of the ARB's decisions is governed by the same standard of review." Id. (citing Robinson v. Missouri Mining Co., 955 F.2d 1181, 1183 (8th Cir. 1992)). Also as noted by the magistrate judge, the "arbitrary and capricious" standard applies to the court's review of the agency's decision. Id. at p. 48 (citing Minnesota v. Centers for Medicare and Medicaid Services, 495 F.3d 991, 996 (8th Cir. 2007)) (other citation omitted).

"Whether an agency's action is arbitrary and capricious depends on whether 'the agency has . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' " Mausolf v. Babbitt, 125 F.3d 661, 669 (8th Cir. 1997) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). "The court is not to substitute its judgment for that of the agency." (Docket 30, p. 49) (citing Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43). Moreover, "the agency must articulate a 'rational connection between the facts found and the choice made.' " Id. (citing Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). The court must accept all factual findings of the agency if those findings are supported by a preponderance of the evidence. Id. at p. 49-50 (citing Fort Hood Barbers Ass'n v. Herman, 137 F.3d 302, 307 (5th Cir. 1998); Williams v. United States Dept. of Labor, 697 F.2d 842, 844 (8th Cir. 1983)).

The burden is on petitioners to "affirmatively demonstrate that the DA's [decision] was unreasonable." Id. at p. 50 (citations omitted). "Merely showing that there were other classifications available, or even classifications which were *preferable* to the classification made by the DA, is insufficient to justify reversing the DA's decision." Id. (citation omitted) (emphasis in original).

## I. THE MAGISTRATE JUDGE ERRONEOUSLY CONCLUDED THE LAW OF THE CASE DOCTRINE WAS NOT APPLICABLE

Petitioners object to the magistrate judge's conclusion that the DA was not bound by the decision of the ARB in Bionetics I. (Docket 33, p. 1). They assert the law of the case doctrine is applicable to the DA's ultimate decision. Id.

" 'The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings . . . .' " Brachtel v. Apfel, 132 F.3d 417, 419 (8th Cir. 1997) (citation omitted). "The law of the case doctrine also applies to administrative agencies on remand." Id. at 419-20 (internal citations and quotation marks omitted). "The law of the case doctrine . . . ensure[s] uniformity of decisions, protect[s] the expectations of the parties, and promote[s] judicial economy." United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995). " 'Law of the case terminology is often employed to express the principle that inferior tribunals are bound to honor the mandate of superior courts within a single judicial system.' " Id. (citing 18 Charles A. Wright, Arthur R. Miller & Edward H.

6

Cooper, Federal Practice & Procedure § 4478 (1981 & Supp. 1995)). " 'Under the law of the case doctrine, a [lower tribunal] must follow our mandate, and [an appellate tribunal] retain[s] the authority to decide whether the [lower tribunal] scrupulously and fully carried out our mandate's terms.' " Id. (citation omitted). "Under the law of the case doctrine . . . [an appellate tribunal] retain[s] the authority to decide whether the [lower tribunal] scrupulously and fully carried out [the appellate tribunal's] mandate terms." Jaramillo v. Burkhart, 59 F.3d 78, 80 (8th Cir. 1995). This control includes the right to determine whether the mandate "has been misconstrued or has not been given full effect. . . ." In re Ivan F. Boesky Securities Litigation, 957 F.2d 65, 69 (2d Cir. 1992). On remand, the lower tribunal's "action . . . should not be inconsistent with either the express terms or the spirit of the mandate." Id.

The magistrate judge properly identified the law of the case doctrine and its purpose. (Docket 30, pp. 56-58). In similar fashion, the magistrate judge properly concluded the ARB decision in Bionetics I did not constitute the law of the case so as to be legally binding on the DA on remand for reconsideration of the 2002 decision. Id. at pp. 58-59. The ARB did not make any specific factual findings in Bionetics I with respect to whether petitioners should be classified as ETM II's or ET IV's. In Bionetics I, the ARB simply reviewed the analysis used by the WHD in 2002 to conclude the ETM II classification was proper for petitioners' work and no conformance was required. Bionetics I, 2004 WL 230772 at *9. Based on its review, the ARB concluded the administrative

7

record did not support the administrator's decision to use a prior WHD ruling to apply to petitioners' circumstances.  Id.  The ARB concluded the "Administrator's final ruling lacks an adequate explanation of her choice . . . ."  Id. at *10.  Thus, the ARB remanded the matter to the agency "for further action consistent with this opinion, the SCA, and the implementing regulations."  Id.  The ARB directed the agency to develop the record and address the following:

1. How and when the conformance question was originally brought to WHD's attention and prompting action under 29 C.F.R. § 4.6(b)(2)(vi);

2. Whether the Air Force or Bionetics took steps to comply with §§ 4.6(b)(2)(i) and (ii); and

3. The factors relevant to setting a wage rate under §§ 4.6(b)(2)(i), (ii) and (iv).

Id. (summarized).  To evaluate these matters the ARB required the agency to consider petitioners' documents "proffered on appeal to determine whether they are relevant" and further "allow the opposing parties to offer documents in response. . . ."  Id.  Petitioners' documents became the agency's supplemental administrative record.[3]  (Docket 30, p. 36; see also Docket 21).

As mentioned above, the report and recommendation contains a detailed abstract of the administrative record.  (Docket 30, pp. 3-47).  The court agrees

---

[3]The magistrate judge recognized that the "original" administrative record appears as Docket 7.  (Docket 30, p. 36).

with the magistrate judge's conclusion that the ARB's decision in <u>Bionetics I</u> did not make any "specific factual findings" in ordering remand of the case to the agency. <u>Id.</u> at p. 59. The action of the agency and the final decision of the DA are not "inconsistent with either the express terms or the spirit of the mandate." <u>In re Ivan F. Boesky Securities Litigation</u>, 957 F.2d at 69.

In their appeal from the DA's October 2005 decision, the petitioners specifically asserted the DA's "ruling did not conform to the decision and order of remand of the [ARB] dated January 30, 2004. . . ." (Docket 21, Petition for Review, July 7, 2006, Supplemental Administrative Record, document 2). <u>See also</u> Docket 21, Amended Petition for Review, March 23, 2007, Supplemental Administrative Record, document 10. The court agrees with the magistrate judge that in <u>Bionetics II</u> the ARB "necessarily rejected any argument that the DA violated its instructions for remand." (Docket 30, pp. 59-60). "The ARB knew its original intent in remanding the matter, and deference is due the ARB in its construction of its own remand order." <u>Id.</u> at p. 60. "This court's proper role is to defer to the ARB's interpretation of whether its order of remand was violated." <u>Id.</u> (citing <u>Brachtel</u>, 132 F.3d at 419-20).

For these reasons, petitioners' Objection I is denied and the court adopts the magistrate judge's conclusion of law that the law of the case doctrine is not applicable to the DA's final decision.

## II. THE MAGISTRATE JUDGE ERRONEOUSLY CONCLUDED THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE DA'S 2005 DECISION

Petitioners claim the magistrate judge misunderstood the concept of "skills required and duties performed" within a conformance action in judging the DA's decision against the administrative record. (Docket 33, p. 4). Petitioners assert their primary job skill was metrology and not calibration. Id. "To the extent the Magistrate misses the point of considering the true level of 'skill required' of Petitioners' employment, the Magistrate is unable to effectively rule on whether and to what extent the ARB abused its discretion within the confines of Section 4.6(B)(2)(iv)(A)." Id. at p. 5. Petitioners claim the DA, the ARB and the magistrate judge all failed to properly appreciate their metrology activities supersede and precede the precise task of calibration. See Docket 33, p. 4; see also Docket 30, p. 51 (citing Docket 15, p. 18).

"Calibration is a comparison between items of equipment, one of which is a measurement standard of known accuracy, to detect, correlate, adjust and report any variation in the accuracy of the other item(s)." (Docket 21, supplemental administrative record, document 7, pp. 1-2). "Metrology [is] the science or system of weights and measures used to determine conformance to technical requirements including the development of standards and systems of absolute and relative measures." Id. at pp. 1-4.

Title 29, part 4, section 6(b)(1) of the Code of Federal Regulations provides "[e]ach service employee employed in the performance of this contract

10

. . . shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits . . . as specified in any wage determination attached to this contract." 29 C.F.R. § 4.6(b)(1). Section 4.6(b)(2)(i) then provides:

> [A]ny class of service employee which is not listed therein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination), be classified by the contractor so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed class of employees shall be paid the monetary wages and furnished the fringe benefits as are determined pursuant to the procedure in this section.

29 C.F.R. § 4.6(b)(2)(i).

The process of completing a conformance process is established in Section 4.6(b)(2)(iv). That section provides:

> The process of establishing wage and fringe benefit rates that bear a reasonable relationship to those listed in a wage determination cannot be reduced to any single formula. The approach used may vary . . . depending on the circumstances. Standard wage and salary administration practices which rank various job classifications by pay grade pursuant to point schemes or other job factors may, for example, be relied upon. Guidance may also be obtained from the way different jobs are rated under Federal pay systems (Federal Wage Board Pay System and the General Schedule) or from other wage determinations issued in the same locality. <u>Basic to the establishment of any conformable wage rate(s) is the concept that a pay relationship should be maintained between job classifications based on the skill required and the duties performed</u>.

29 C.F.R. § 4.6(b)(2)(iv)(A) (emphasis added). Once conformance occurs, "[t]he wage rate and fringe benefits finally determined . . . shall be paid to all employees performing in the classification from the first day on which contract work is performed by them in the classification." 29 C.F.R. § 4.6(b)(2)(v).

11

Should the contractor fail to identify a class of service employees whose jobs do not fit in the classifications listed in the wage determination and then seek a conformance as contemplated by § 4.6(b)(2)(i), the WHD "shall make a final determination of conformed classification, wage rate, and/or fringe benefits which shall be retroactive to the date such class of employees commenced contract work." 29 C.F.R. § 4.6(b)(2)(vi).

The essence of a conformance evaluation is whether a current classification is appropriate and that the classified list "provide[s] a reasonable relationship (i.e., appropriate level of skill comparison)" to the unlisted classifications. 29 C.F.R. § 4.6(b)(2)(i). The "reasonable relationship" impliedly relies on an evaluation of the "appropriate level of skill comparison." Id. If there is a reasonable relationship between the skill comparison of a listed classification and a group of unclassified employees, then no conformance is required. It is only if there is no "appropriate level of skill comparison" that a conformance is required under § 4.6(b)(2)(i).

Petitioners separate this analysis between a "skills required" and "duties performed" comparison between a classified group and a non-classified group. (Docket 33, p. 4). This comparison is not required, however, if the current classification of job descriptions reasonably relate to the job which the group seeking conformance performs. Petitioners argue they should be classified as Metrology Technicians within the Engineering Technician (ET IV) job family and

not within the Electronics Technician, Maintenance (EMT II) grouping. The DA specifically addressed this argument:

> In some cases the conformance was approved by comparing the conformed classification to the Electronics Technician, Maintenance (ETM) job family and in other cases the conformed classification was compared to the Engineering Technician (ET) job family. Both the ETM and the ET job families require duties and skills that are comparable to the duties and skills for Metrology Technicians. Therefore, both job families provide a reasonable relationship to the Metrology Technician classification. <u>If the parties . . . agreed on the use of the ETM or the ET job family as the basis for a conformance for Metrology Technicians, the [WHD] would approve the conformance regardless of the job familiy used to establish the reasonable relationship in that case</u>.

(Docket 21, supplemental administrative record, document 1, p. 2) (emphasis added). But if the parties are unable to agree on which job family to use, then WDH is required "to decide which job family is more appropriate for conforming the Metrology Technicians in this case." <u>Id.</u> After reviewing the administrative record, the DA concluded "the record demonstrates, calibration of specialized equipment constitutes the primary duty of the Metrology Technicians in this case." <u>Id.</u> at pp. 3-4). The DA acknowledged that "[a]lthough calibration duties are not specifically included within the Directory definitions for either the ETM or the ET occupations, the Directory does provide some guidance in this regard." <u>Id.</u> at p. 4. After reporting the analysis of the Directory, the DA determined "[b]ecause the Directory occupational base for the ET job family specifically directs the user to the ETM job family for employees 'engaged in calibrating, repairing or maintaining electronic equipment,' we conclude the

13

ETM job family provides a better 'skill comparison' to the duties of the Metrology Technician occupation [in this case]." Id. After analyzing petitioners' nation-wide metrology work argument, the DA "concluded that the Metrology Technician classification most closely compares to the ETM II classification in terms of duties and skills."[4] Id. p. 5.

On appeal from the DA's October 2005 decision, the ARB ruled "[a] preponderance of the evidence supports the [DA's] determination that the Petitioners' primary duty as Metrology Technicians is calibrating specialized equipment . . . ." Bionetics II, 2008 WL 5454135 at *5. "[A] February 2001 on-site investigation . . . determined that the . . . technicians 'spent the majority of their time conducting calibration of specialized equipment. . . .' The WHD investigator further determined that calibration was 'the important aspect of the job' . . . ." Id. "Evidence that the Petitioners rely upon does not contradict WHD's determination that calibrating specialized equipment was the primary duty or that his decision was unreasonable." Id. "The record . . . shows that the [DA] offered support for and explained his wage rate ruling, and that that ruling is consistent . . . . with the regulations, not unreasonable, and not an unexplained departure from past determinations, we must uphold it." Id. at *6.

---

[4]In arriving at this conclusion, the DA recognized "[t]he fact that the ETM rates are lower . . . at . . . Ellsworth AFB, SD, is not a sufficient basis to reject the conformance approach that is most appropriate based upon a comparison to the occupational definitions in the SCA Directory." Id. at p. 5.

Petitioners claim the October 2005 decision of the DA is not supported by the "substantial evidence in the Administrative Record." (Docket 33, p. 4). The magistrate judge specifically addressed petitioners' claims in this regard. See Docket 30, pp. 51-55.

For the reasons stated above, the court concludes the agency's findings are supported by a preponderance of the evidence. Fort Hood Barbers Ass'n, 137 F.3d at 307; Williams, 697 F.2d at 844. Those findings are neither "contrary to the law" nor "unsupported by substantial evidence" in the record as a whole. Meehan Seaway Serv. Co., 125 F.3d at 1166. The agency has "articulate[d] a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n, 463 U.S. at 59) (quoting Burlington Truck Lines, Inc., 371 U.S. at 168).

Petitioners' Objection II is overruled and the report and recommendation is adopted by the court.

### III. THE MAGISTRATE JUDGE ERRONEOUSLY CONCLUDED THE AIR FORCE'S APPLICATION FOR RECONSIDERATION OF THE SEPTEMBER 2001 DECISION WAS TIMELY MADE

Petitioners object to the "Magistrate's unwillingness to address the overall history of these proceedings as it relates to the abuse of discretion exercised by this administrative agency." (Docket 33, p. 5). Petitioners focus on two specific issues.

Petitioners' first issue places emphasis on the failure of "the Air Force and/or Bionetics [to] do anything to comply with relevant regulations in response to Petitioners' initial claims for wage parity." Id. Both the ARB and the magistrate judge recognized the Air Force and Bionetics did not promptly comply with the letter and spirit of § 4.6(b)(2). See Bionetics II, 2008 WL 5454135 at *7 and Docket 30, p. 62, n. 30. The ARB found this issue to be "moot because, even assuming that Bionetics or the Air Force did not inititate the conformance, the [DA] properly determined that the Petitioners were not entitled to a retroactive wage increase." Bionetics II, 2008 WL 5454135 at *7. In the same fashion, the magistrate judge concluded "[r]egardless of whether the conformance action was initiated by Bionetics or its employees, the retroactivity of any successful conformance action is the same." (Docket 30, p. 62, n. 30). The conformance request was properly considered by WHD and petitioners' argument is moot.

Petitioners' second procedural issue is that the Air Force made an "untimely request" to rescind the initial determination of WHD in petitioners' favor. (Docket 33, p. 5). In Bionetics I, the ARB specifically addressed petitioners' objection. The ARB concluded:

> The Administrator acted within her discretion in reviewing and ruling on the Air Force's request for reconsideration. Unlike Section 4.55(a), which confers on interested parties a right to seek reconsideration of a wage determination within a limited timeframe, the conformance regulations do not expressly provide for the filing and review of reconsideration requests.

16

Bionetics I, 2004 WL 230772 at *7.  In arriving at this conclusion, the ARB directly compared 29 C.F.R. § 4.55(a) with 29 C.F.R. §§ 4.6(b)(2)(i)-(vi).  Id.  The ARB concluded the 30-day time frame dictated by § 4.6(b)(2)(ii) for the WHD to complete action on a conformance request is "directory rather than jurisdictional."  Id.

The magistrate judge properly addressed this issue in the report and recommendation.  (Docket 30, p. 64).  "The USAF was free to request reconsideration at any time, and the administrative agency was free to reconsider its final decision for error within a reasonable time."  Id.  The interpretation by the agency is reasonable one.  South Dakota v. United States Department of Interior, 423 F.3d 790, 800 (8th Cir. 2005) ("[T]he agency need not exhaustively analyze every factor, but must base its determination upon factors listed in the appropriate regulations and must use a reasonable interpretation of the regulation and the statute in reaching its conclusion.") (citation and internal quotation marks omitted).

The initial conformance analysis was properly reconsidered by WHD.  Petitioners' Objection III is denied and the report and recommendation is adopted by the court.

## ORDER

Based upon the discussion above, it is hereby

ORDERED that petitioners' objections (Docket 33) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's findings of fact and conclusions of law (Docket 30) are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C).

IT IS FURTHER ORDERED that the decision of the Administrative Review Board (2008 WL 5454135), which upheld the October 31, 2005, decision of the Wage and Hour Division, United States Department of Labor, is affirmed.

Dated March 29, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE